UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 18-MJ-02629-TORRES

UNITED STATES OF AMERICA

vs.

SANDRA RUBALLO,

       Defendant.

_____/

**CRIMINAL COVER SHEET**

1. Did this matter originate from a matter pending in the Northern Region of the United States Attorney's Office prior to October 14, 2003? _____ Yes __X__ No

Respectfully submitted,

BENJAMIN G. GREENBERG
UNITED STATES ATTORNEY

BY: /s/ _____
ANNE P. MCNAMARA
ASSISTANT UNITED STATES ATTORNEY
Florida Bar No. A5501847
99 N.E. 4th Street, 6th Floor
Miami, Florida 33132-2111
TEL: (305) 961-9213
EMAIL: Anne.McNamara2@usdoj.gov

AO 91 (Rev. 08/09) Criminal Complaint

# UNITED STATES DISTRICT COURT
for the
Southern District of Florida

| | |
|---|---|
| United States of America<br>v.<br>Sandra Ruballo,<br>*Defendant(s)* | Case No. 18-MJ-62629 - TORRES |

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of __Jan. 25, 2012 - April 19, 2018,__ in the county of __Miami-Dade__ in the __Southern__ District of __Florida__, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. § 1349 | Conspiracy to Commit Wire Fraud |

This criminal complaint is based on these facts:
SEE ATTACHED AFFIDAVIT.

☑ Continued on the attached sheet.

*Complainant's signature*

Robert Hawkeye Norman, Special Agent, USSS
*Printed name and title*

Sworn to before me and signed in my presence.

Date: __04/25/2018__

*Judge's signature*

City and state: __Miami, Florida__   Hon. Edwin G. Torres, U.S. Magistrate
*Printed name and title*

## AFFIDAVIT

I, Robert Hawkeye Norman, having been duly sworn, hereby depose and state as follows:

## AGENT BACKGROUND AND INTRODUCTION

1. I am a Special Agent ("SA") with the United States Secret Services ("USSS") and have been since May 2016. Prior to my employment with USSS, I served 15 years in the United States Marine Corps. In my role as an SA, I have participated in investigations, search warrants, and arrests pertaining to various economic crimes. I have also received extensive training in the proper investigative techniques for various offenses under Title 18, including Sections 371, 1028A, 1029 and 1343. As an SA, I am an "investigative or law enforcement officer of the United States or of a state" within the meaning of Title 18, United States Code, Section 2510(7).

2. The information contained in this Affidavit is submitted for the sole purpose of establishing probable cause to support this criminal complaint against Sandra RUBALLO, for violations of Title 18, United States Code, Section 1349, that is, conspiracy to commit wire fraud. The information in this Affidavit is based on my personal knowledge and information provided to me by others, including other law enforcement personnel. The information set forth herein is provided solely for the purpose of establishing probable cause in support of the criminal complaint. Because this Affidavit is submitted for the limited purpose of establishing probable cause, it does not include all of the facts learned during the investigation.

## BACKGROUND

3. The Child Care Food Program ("CCFP") is administered in Florida by the Department of Health ("DOH"), Bureau of Child Care Food Programs. Financial grants are awarded annually to the DOH from U.S. Department of Agriculture ("USDA"), Food and Nutrition Service ("FNS") to fund the entire CCFP. The purpose of the CCFP is to provide nutritious meals and snacks for underprivileged children in daycare centers located in the Southern District of Florida, and elsewhere. The CCFP is designed to ensure proper nutrition to young children who receive a significant portion

of their daily food intake in child care settings. As such, the CCFP provides children classified at or below a certain family income level with up to two (2) meals and one (1) snack, or two (2) snacks and one (1) meal per day, at a free or a reduced rate. Centers often contract with a sponsoring organization to process their paperwork for the CCFP, and submit it to DOH. In those situations, the sponsoring organization enters into an agreement with the DOH to operate the CCFP, and assumes administrative and financial responsibility for the CCFP on behalf of the center.

4. Highland Food Resources, Inc. ("HFR") is a Florida corporation incorporated on or about November 6, 2002, with a principal address of 1021 Ives Dairy Road, Suite 214, Miami, Florida 33179. Throughout the relevant period, RUBALLO was an owner, operator, and registered agent of HFR. As such, RUBALLO oversaw the daily operation of HFR. She was also a signatory on multiple HFR and related bank accounts.

5. HFR is a CCFP sponsoring organization of more than two-hundred (200) child daycare centers operating in the Southern District of Florida. In this role, HFR processes the CCFP paperwork for the centers, and files monthly claims for meal reimbursements with DOH on behalf of the centers. The reimbursement rate is based on the total number of free, reduced and non-needy applications on file for the children enrolled in the daycare centers. Reimbursement is calculated on a sliding scale, with the largest reimbursement being for children at the daycare centers classified as free, then reduced, then non-needy. That rate is then multiplied by the number of meals served in each category, in order to determine the total reimbursement to the daycare center.

6. For daycare centers that use HFR as a CCFP sponsoring organization, HFR submits the monthly claims electronically, after which the DOH issues electronic reimbursement payments to HFR. HFR in turn pays the daycare centers, less HFR's fee, which is a percentage of the total monthly meal reimbursements. Thus, the size of HFR's payment derived from its sponsoring of a daycare center is driven, in part, by the number of meals claimed by daycare centers that are multiplied by a

2

higher reimbursement rate for the free and reduced meals/snacks. During the relevant period, HFR was solely funded by the CCFP, via funds wired electronically from the USDA, outside of the state of Florida, to the CCFP, and then to HFR. From 2012 through 2016, HFR received a monthly average of $847,571 in electronic reimbursement payments from the USDA. During this same period, HFR received several million dollars in funds from the CCFP. As described in more detail below, this money was obtained through fraud.

7. Additional duties of CCFP sponsoring organizations such as HFR include approving free and reduced meal applications for children at the daycare centers, conducting inspections at the centers multiple times a year, and reviewing the centers' documentation that is ultimately used by the sponsoring organization to submit a monthly reimbursement claim to the USDA, through the DOH. Duties of HFR employees reviewing a daycare center's documentation include, among other things, approving or rejecting free and reduced lunch applications, reviewing meal count records and enrollment rosters, and confirming that children are accurately reflected on the CCFP forms as free, reduced or non-needy. Documentation that the CCFP sponsoring organization reviews as part of this oversight process includes, among other things, attendance records, meal disallowances, and reimbursement receipts.

8. As a sponsoring organization, HFR contracts with caterers to deliver meals to children at daycare centers under CCFP guidelines. Unreported cash kickbacks are not permitted under the CCFP catering guidelines. As part of the process, HFR solicits caterers through a bidding process, and select the lowest bidder. Once selected, the caterers deliver meals for children at participating daycare centers, and are ultimately reimbursed by HFR under the terms of their agreement for the meals provided.

9. Montoya Holdings, Inc. "Montoya Holdings," d/b/a Healthy Children Catering, is a Florida corporation incorporated on or about February 27, 2004, and located in the Southern District

3

of Florida. Throughout the relevant period, Carlos Montoya ("Montoya") was the owner and operator of Montoya Holdings. As such, Montoya oversaw the daily operation of Montoya Holdings. He was also a signatory on multiple Montoya Holdings, Healthy Children Catering, and related bank accounts.

10. Montoya Holdings was one of the catering services that participated in the bidding process, and ultimately contracted with HFR to provide meals under the CCFP to eligible students at participating daycare centers located in the Southern District of Florida. In return for providing such meals, Montoya Holdings was paid, via HFR, with CCFP funds.

## PROBABLE CAUSE

11. Based on complaints received by the USDA, law enforcement began an investigation in 2016 into HFR and Montoya Holdings. During the investigation, law enforcement interviewed several individuals familiar with HFR and Montoya Holdings, including past and present employees. Multiple individuals stated to law enforcement that, during monthly claims reviews, HFR employees would identify problems with the paperwork that daycare centers submitted to HFR, such as missing signatures, income amounts, food stamp numbers, meal count and attendance discrepancies, and bring them to the attention of HFR management.

12. As corroborated by, among other things, interviews with "Y.M.," a cooperating co-conspirator, banking records, business records, and documentation submitted to the DOH in furtherance of the scheme, RUBALLO and her co-conspirators knowingly and intentionally falsified and caused to be falsified, paperwork for children enrolled at daycare centers sponsored by HFR. RUBALLO and her co-conspirators did this by adding food stamp numbers, falsifying signatures, and modifying reported family income levels, in order to qualify for more free and reduced meals as part of the CCFP. This materially false and fraudulent documentation was then used as the basis for

the inflated final monthly reimbursement claims submitted electronically by RUBALLO to the USDA, through the DOH.

13. Paperwork was also provided to law enforcement from the DOH as part of the investigation, including records from more than one hundred (100) daycare centers that utilized HFR as a sponsoring organization, the majority of which HFR contracted with Montoya Holdings to provide catering services for. Additionally, law enforcement obtained reports of surprise inspections conducted by the Florida Department of Child and Family Services ("DCFS") at many of these same centers, during the same time period. Law enforcement then compared the documents submitted to the DOH by HFR with the DCFS inspection reports for the same daycare centers. In each instance, the DCFS inspection report listed fewer children present at the daycare center than the meals claimed by the center, through HFR, for purposes of CCFP reimbursement.

14. "Daycare Center 1" is one of the daycare centers located in Miami-Dade County that used HFR as a sponsoring organization. Several witnesses interviewed by law enforcement identified Daycare Center 1 as a center that cooperating co-conspirator Y.M. oversaw paperwork for while working at HFR under the direction of RUBALLO. The CCFP claims for Daycare Center 1 were reviewed as part of the investigation. Law enforcement reviewed several free and reduced meal applications submitted by Daycare Center 1 in connection with the CCFP. A records check confirmed that several of the applications contained food stamp numbers that did not belong to any member of the listed child's household. The records also revealed that, in most instances, the claims submitted to the DOH by RUBALLO for Daycare Center 1 far exceeded the children found by DCFS on site during surprise inspections.

15. The investigation further revealed that in September 2012, RUBALLO negotiated a contract on behalf of HFR with Montoya Holdings. Under this contract, Montoya Holdings was to provide meals under the CCFP to eligible students at participating daycare centers located in the

5

Southern District of Florida. Such contracts between Montoya Holdings and HFR continued throughout the relevant period. As the owner and operator of HFR, RUBALLO was in charge of negotiating the bidding process and securing contract arrangements with Montoya Holdings.

16. Records obtained by law enforcement during the investigation reveal that HFR has paid Montoya Holdings more than $8 million in CCFP funds since 2012. As corroborated by business records, banking documents, paperwork obtained from the DOH, and witness statements, RUBALLO fraudulently manipulated the bidding process to ensure that Montoya Holdings was the contracted caterer for over 80% of HFR's daycare centers, ultimately servicing more than one hundred and fifty (150) daycare centers utilizing the CCFP program during the relevant period.

17. As part of the investigation, law enforcement conducted interviews with a cooperating co-conspirator. Such interviews revealed that in furtherance of the scheme, RUBALLO conspired with owners and operators of Montoya Holdings, and others, to rig the catering bid process through materially false and fraudulent representations to the CCFP. For example, RUBALLO knowingly and willfully accepted kickbacks from owners and operators of Montoya Holdings in exchange for knowingly and intentionally using false and fraudulent misrepresentations and pretenses regarding meal pricing, bid details, and inflated monthly reimbursement claims to repeatedly secure catering contracts for Montoya Holdings at participating CCFP centers that used HFR as a sponsoring organization. The difference between the represented inflated costs submitted by RUBALLO and the actual costs were used, in part, to fund monthly cash kickbacks paid by the owners and operators of Montoya Holdings to RUBALLO.

18. The kickbacks RUBALLO accepted from Montoya Holdings were calculated on a per meal basis. For example, in furtherance of the scheme, in or around April 2013, RUBALLO knowingly and willfully accepted more than $25,000 in cash kickbacks from owners and operators of Montoya Holdings. During this same month, Montoya Holdings knowingly and willfully received

more than $152,000 in falsely and fraudulently obtained CCFP funds through HFR. The funds were wired electronically from the USDA, outside of the state of Florida, to the CCFP, then to HFR, and ultimately, to Montoya Holdings.

19. Additionally, as corroborated by, among other things, interviews with cooperating co-conspirator Y.M., banking records, business records, and documentation submitted to the DOH in furtherance of the scheme, RUBALLO and her co-conspirators also knowingly and willfully inflated the budget that RUBALLO electronically submitted to the USDA, via the DOH, as part of the CCFP program. For example, Y.M. and others agreed to receive an inflated salary from RUBALLO, in exchange for cashing part of her paycheck and providing it to the owner. Similarly, RUBALLO and her co-conspirators also materially misrepresented and inflated the HFR budget by representing that a maintenance company provided cleaning and maintenance services to HFR, when in reality, as RUBALLO and her co-conspirators knew, no such work was performed. Instead, RUBALLO and her co-conspirators cashed the checks paid by HFR to the maintenance company, via federal funds received by HFR, and used the falsely and fraudulently obtained funds for their personal use and benefit.

20. Additionally, in furtherance of the scheme, and while employed at HFR and in violation of the CCFP rules and regulations, conspirators knowingly and willfully received monthly side payments from daycare centers in exchange for helping with their paperwork and administrative items. Y.M. retained a portion of these payments for her own personal use and benefit, and provided the remainder of them to RUBALLO, who knowingly and willfully accepted the cash payments and retained them for her own personal use and benefit. During this same period, RUBALLO falsely and fraudulently represented to the USDA and DOH in electronic communications that no such side payment arrangements existed.

21. Additionally, in December 2017, law enforcement arrested "Y.M.," a co-conspirator in connection with the investigation. Phone records obtained by law enforcement reveal that after the arrest, there were repeated and frequent communications via calls, text messages, and other means between phone numbers registered to RUBALLO and phone numbers belonging to co-conspirators at HFR and Montoya Holdings.

## CONCLUSION

22. Therefore, based on the information provided above, I respectfully submit that there exists probable cause to believe that Sandra RUBALLO did knowingly, and with intent to defraud, agree with other persons to accomplish a common and unlawful plan to commit wire fraud, all in violation of Title 18, United States Code, Section 1349.

FURTHER AFFIANT SAYETH NAUGHT

_____
Robert Hawkeye Norman, Special Agent
United States Secret Service

Sworn and subscribed before me this 25 day of April, 2018, in Miami, Florida.

_____
EDWIN G. TORRES
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF FLORIDA