**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO. 18-CR-20393-COOKE(s)**

UNITED STATES OF AMERICA

vs.

SANDRA RUBALLO and
CARLOS MONTOYA,

      **Defendants.**
_____/

### UNITED STATES OF AMERICA'S REPLY IN SUPPORT OF ITS OMNIBUS MOTIONS *IN LIMINE*

In advance of the trial against Sandra Ruballo ("Defendant Ruballo") and Carlos Montoya ("Defendant Montoya") (collectively, the "Defendants"), the United States of America respectfully submits this reply in support of its omnibus motions *in limine* (D.E. 81), opposing the pleadings filed by Defendant Ruballo (D.E. 88) and Defendant Montoya (D.E. 89). The Government requests these *in limine* rulings from the Court before trial for the purpose of preparation of opening arguments and presentation of witnesses, and to eliminate needless delays in the presence of the jury during trial. The outstanding disputes between the parties concern (1) whether arguments regarding the Government's charging decisions constitute jury nullification; (2) preclusion of evidence of Defendants' good conduct/compliance with the law to negate fraudulent intent; (3) admissibility of evidence of Defendant Ruballo's knowledge and statements about Riverwood, a prior Child Care Food Program ("CCFP") sponsor at which Defendant Ruballo worked, whose prior CEO was convicted of fraud/bribery; and (4) admissibility of a serious deficiency signed by Defendant Ruballo, in which she agreed to implement protocols

to prevent conflicts of interest. For the reasons below, the Court should grant the Government's motions.

## ARGUMENT

I. **The Court Should Preclude Improper Statements, Commentary and Argument Related to Jury Nullification, Including Evidence and/or Arguments about the Nature of Prosecution and the Government's Charging Decisions.**

Neither Defendant cites any case law or argument countering the proposition that jury nullification-oriented questions, argument, and evidence is irrelevant and inadmissible and accordingly, the Government's motion should be granted. In particular, neither Defendant has cited any case law contesting the proposition that arguments and questions regarding the propriety of *not charging* witnesses are improper. Despite their confrontation rights, Defendants are not entitled to cross-examine witnesses on *the government's* charging decisions. *See, e.g.*, *United States v. Thompson*, 253 F.3d 700, 2001 WL 498430, at *16-*17 (5th Cir. 2001) (unpublished) (upholding grant of government's motion *in limine* to prevent counsel from comparing defendant's conduct to that of other uncharged or immunized witnesses); *see also, e.g.*, *United States v. Re*, 401 F.3d 828, 833 (7th Cir. 2005) (government's exercise of prosecutorial discretion is not proper subject for cross-examination pursuant to Federal Rule of Evidence 403).

Defendant Ruballo does not oppose any of the Government's requested relief in this regard, and instead states a proposition not in dispute – that Defendants have a Sixth Amendment right to confront accusers and cross-examine witnesses (D.E. 88 at 1-2). Defendant Montoya likewise points out his Sixth Amendment rights, but goes beyond Ruballo's pleading and incorrectly claims that the Government seeks a ruling beyond the limits of the law. The Government is not, as Montoya contends, seeking to prohibit cross-examination regarding witness bias or partiality, or regarding the involvement of the cooperating witnesses in the charged crimes (D.E. 89 at 7-8).

2

Instead, the Government is seeking to prohibit improper arguments, questioning, and evidence suggesting that the prosecution is unfair because the government has prosecuted some individuals, but not others; or that there was a witch hunt targeting these Defendants, Ruballo and Montoya, to the exclusion of all others. *Cf. United States v. Rousseau, et al.*, 13-20505-CR-RNS (precluding references to the government as a "war machine" engaged in zealous charging decisions).

The Sixth Amendment does not create a right for a defendant to engage in nullification. *United States v. Gonzalez*, 110 F.3d 936, 947-48 (2d Cir. 1997). The identity and quantity of individuals charged in connection with the fraud, the reasons behind the government's charging decisions, and the culpability of these Defendants as compared to other uncharged individuals are all examples of irrelevant and unfairly prejudicial evidence aimed at jury nullification. Defendants will be permitted to cross the witnesses as to their motives and biases – but it is patently improper to use witnesses to critique the Government's prosecutorial discretion. *Re*, 401 F.3d at 833.

The cases cited by the Government, and in particular *Thompson*, directly address – and reject – the idea that the Sixth Amendment would allow a defense attorney to make arguments "compar[ing] [their] client's conduct with those who had done similar acts but were not prosecuted." *United States v. Thompson*, 253 F.3d 700 (5th Cir. 2001). As the Government is doing here, in *Thompson*, government counsel moved to preclude the defense counsel from raising any type of comparison of the arguably criminal acts of uncharged or immunized witnesses to the alleged criminal acts of a defendant. Despite the defendant's Sixth Amendment-based argument that he should be permitted to make these arguments, the Fifth Circuit Court of Appeals affirmed the district court's decision to bar them. The Court reasoned that such arguments would "tempt jurors to violate their oaths," and cited, among other cases, binding precedent from the Eleventh Circuit: *United States v. Funches*, 135 F.3d 1405, 1408 (11th Cir.1998) ("the right to make closing

3

argument does not include the right to have counsel make an improper argument encouraging the jury to use its "de facto power to refuse to apply the law as instructed by the court [and] exercise ... such power in dereliction of the jury's sworn duty."). The same logic applies here.

## II. Evidence of Defendants' Good Conduct and/or Prior Instances of Compliance with the Law Are Inadmissible and Cannot Be Used to Negate Fraudulent Intent.

The Court should grant the Government's motion for an *in limine* ruling precluding the Defendants from arguing, eliciting on direct or cross-examination, or offering any evidence at trial previous instances of: (a) legitimate claims submitted by Highland to the CCFP, for reimbursement from DOH; (b) compliance with DOH procedures and policies; (c) proper services rendered; and/or (d) benefits obtained by children at the centers under HFR's sponsorship.

Evidence of prior compliance with the law is not relevant to the charges in the Superseding Indictment and, in accordance with binding Eleventh Circuit case law and Federal Rule of Evidence 404, should be precluded at trial. While Defendants counter the Government's motion by arguing that evidence of their respective prior compliance with the law is evidence of actual innocence (D.E. 88 at 2, D.E. 89 at 8-9), the law is to the contrary – and neither Defendant has cited any cases that support their positions. The Eleventh Circuit has stated that evidence that a defendant engaged in legal, honest conduct some of the time is simply irrelevant to the question of whether the defendant engaged in, and/or had knowledge of, the charged fraud, because "evidence of good conduct is not admissible to negate fraudulent intent." *United States v. Ellisor*, 522 F.3d 1255, 1270 (11th Cir. 2008) (quoting *United States v. Camejo*, 929 F.2d 610, 613 (11th Cir. 1991)); *see also United States v. Grimm*, 568 F.2d 1136, 1138 (5th Cir. 1978) ("Evidence of noncriminal conduct to negate the inference of criminal conduct is generally irrelevant"); *United*

4

*States v. Scarpa*, 897 F.2d 63, 70 (2d Cir. 1990) ("A defendant may not seek to establish his innocence … through proof of the absence of criminal acts on specific occasions.").

### III. The Court Should Preclude Victim-Blaming Argument, Evidence, and Commentary.

Here, the Government is simply seeking a ruling affirming the well-settled proposition that victim-blaming arguments are legally impermissible. The parties are largely in agreement on this issue, and the Government rests on its prior briefing.

### IV. Evidence of Defendant Ruballo's Knowledge of Prior CCFP Fraud Is Admissible At Trial As Evidence of, *Inter Alia*, Defendant Ruballo's Knowledge and Intent to Defraud.

#### A. Evidence of Fraud at Riverwood Youth Opportunities Is Admissible As Evidence of Defendant Ruballo's Knowledge and Intent to Commit the Charged Crimes.

Prior to committing fraud at HFR, Defendant Ruballo was a bookkeeper at Riverwood Youth Opportunities ("RYO"). During Defendant Ruballo's time at RYO, the director of RYO, Judy Perlin, was committing many of the types of fraud that Ruballo subsequently adopted at HFR.

The Government is not seeking to prove the fraud that was alleged in the Riverwood ("RYO") case, case 10-60114-CR-WPD, nor is the Government seeking to prove that Ruballo participated in the fraud at RYO. Rather, the Government intends to present evidence that (1) Defendant Ruballo knew that RYO got in trouble for fraud; (2) Defendant Ruballo told cooperating witness Yudy Miranda – soon before Miranda stopped working at Highland in 2016 – that she would not get in trouble for committing fraud because Judy Perlin, the leader of RYO, was sentenced to probation; and (3) Defendant Ruballo worked at RYO prior to Highland, and after the criminal case against RYO was brought in 2010, Highland assumed responsibility for a larger number of childcare centers, as it took on childcare centers previously under RYO's umbrella.

5

This evidence will be introduced through documents and testimony, including from Yudy Miranda herself, who will describe Defendant Ruballo's statements to her regarding RYO.

This evidence is proof of Defendant Ruballo's intent and guilty knowledge, as well as background and context for the fraud that Ruballo spearheaded at Highland Food Resources. As the evidence is intrinsic, it should be admitted at trial in accordance with the precedents cited in the Government's initial motion (D.E. 81 at 14-18). In the alternative, this evidence is admissible under Rule 404(b) of the Federal Rules of Evidence to show lack of mistake or accident, Defendant Ruballo's knowledge, and other permissible non-character purposes.

While Defendant Ruballo argues that her defense will not involve a lack of knowledge claim, because she will assert that fraud did not happen, this defense – if true – only further shows the relevance and applicability of the anticipated RYO evidence. In particular, Yudy Miranda's anticipated statements are direct evidence that fraud *did* happen – when Miranda told Ruballo that she was concerned that HFR was committing fraud, Defendant Ruballo cited Judy Perlin's federal criminal fraud prosecution and resulting probationary sentence in the 2010 RYO case to attempt to calm her down. This anticipated testimony demonstrates Ruballo's consciousness of guilt – when confronted with the evidence of fraud at her own organization, Ruballo's reaction was not shock or dismay, but rather a citation to a *prior federal criminal fraud prosecution for the same conduct of which she was already aware*. The jury will need to understand some context concerning RYO to understand this anticipated testimony. This will not be a confusing nor a collateral affair; it is direct evidence of Defendant Ruballo's knowledge that her actions at HFR constituted fraud. The relevant point about RYO is its impact on Ruballo's knowledge, and

Ruballo's more recent statements to Yudy Miranda and others regarding RYO.[1] Accordingly, the Government's motion should be granted.

### B. Evidence of the 2004 Serious Deficiency and 2005 Stipulation with DOH Signed by Defendant Ruballo Is Admissible As Evidence of Defendant Ruballo's Knowledge and Intent to Commit the Charged Crimes.

Some of the government's central allegations of fraud concern Defendant Ruballo's failure to disclose conflicts of interest to the DOH, and her decisions to engage in business with Defendant Montoya, as well as others with whom conflicts of interest existed. See Superseding Indictment (D.E. 56) at 8 ("It was a purpose of the conspiracy for the defendants and their co-conspirators to unlawfully enrich themselves by obtaining money from the USDA, through the DOH, by (a) submitting and causing the submission of false and fraudulent claims for reimbursement from the CCFP; (b) concealing the submission of false and fraudulent claims to the CCFP; and (c) falsely and fraudulently representing to the DOH that catering contracts were being awarded through appropriate means, in accordance with CCFP program rules and regulations, when in truth and in fact, bribes and kickbacks were paid."). Thus, Ruballo's knowing violation of CCFP rules relating to conflict of interest and competitive procurement processes are central to the wire fraud charges alleged in this case. Furthermore, by pleading not guilty, Ruballo is putting the knowledge element – and her intent, as well as all other elements of the charged crimes – at issue.

In 2005, years before the charged fraud scheme, Ruballo signed an agreement with DOH confirming that she would take necessary steps to ensure that "future conflicts of interests or

---

[1] Defendant Ruballo's pleading states that she was the "whistleblower" in the RYO case. The United States is not aware of any admissible evidence establishing that to be the truth. However, her claim that she was a whistleblower directly contradicts her argument that the fraud at RYO occurred only after she left RYO, and underscores the relevance and admissibility of the proffered evidence.

appearances of impropriety are strictly avoided." This agreement arose out of a finding by DOH that a HFR board member was engaged in other business relationships with the owner of a caterer who won HFR's CCFP contracts. As a result of the settlement, Defendant Ruballo had to fire Highland's three board members, and agreed to appoint appropriate, conflict-free, new board members. Moreover, in the settlement, which Defendant Ruballo signed on February 17, 2005, Highland and Defendant Ruballo agreed that they "shall assure that an employee is hired or a director appointed within 30 days of entry of an order adopting this settlement agreement, who shall be responsible for assuring that future conflicts of interests or appearances of impropriety are strictly avoided."

This evidence is necessary to show that Defendant Ruballo knew that concealing side dealings with a caterer constituted an impermissible conflict of interest that violated CCFP rules and regulations. Indeed, in this case, Defendants Ruballo and Montoya are accused of concealing their inappropriate financial relationship – based on an exchange of kickbacks – from DOH. In order to convict Ruballo of defrauding the CCFP, the United States must prove beyond a reasonable doubt that she knew that her side relationship with Montoya constituted a conflict of interest. Her signed statement acknowledging that conducting side businesses with a caterer constitutes a conflict of interest is relevant to establishing that knowledge.

Ruballo contends in her response (D.E. 88 at 7) that the catering contracts signed by Ruballo and Montoya are sufficient to prove that she knew that conflicts of interest were not permitted. Those conflicts of interest forms state: "I/we warrant and affirm that we have no financial interest in the caterer." They do not provide the level of detail that the prior stipulation signed by Ruballo provides, nor do they show that Ruballo knew that such improper relationships were material to the DOH. Ruballo also complains that the prior violation by her board member is not "evidence

of criminal wrongdoing or malfeasance" by Ruballo. (D.E. 88 at 8.)  The United States agrees – and this fact weighs strongly in favor of admissibility because it further confirms that the proffered evidence will not unduly prejudice Ruballo.  The point is that – by her own signature – Defendant Ruballo, through the serious deficiency documents, agreed that she knew of – and agreed not to engage in – business practices that constituted or created inappropriate conflicts of interest.

Last, to the extent that any such evidence could prejudice Ruballo unfairly, the Court will provide a limiting instruction to the jury. *See United States v. McNair*, 605 F.3d 1152, 1204 (11th Cir. 2010) (explaining that limiting instructions can mitigate risk of unfair prejudice from admission of Rule 404(b) evidence).  "[I]n a criminal trial relevant evidence is inherently prejudicial; it is only when unfair prejudice substantially outweighs probative value that the rule permits exclusion."  *United States v. Spoerke*, 568 F.3d 1236, 1251 (11th Cir. 2009) (quoting *United States v. King*, 713 F.2d 627, 631 (11th Cir. 1983)).  There is no unfairness here.

For the foregoing reasons, the United States respectfully requests that the Court permit it to introduce evidence of the prior conflict of interest deficiencies of HFR to establish Ruballo's guilty knowledge, and intent, concerning her improper conflict of interest with Defendant Montoya.

**V.     Evidence of Defendant Ruballo's Extramarital Affair with Highland Food Resources' Civil Corporate Counsel Is Admissible.**

The Government will consolidate its arguments regarding this topic in its forthcoming response to Defendant Ruballo's cross-motion to suppress this evidence (D.E. 90).

**VI.    The Court Should Preclude the Use of Law Enforcement Agent Interview Reports for Impeachment of Government Witnesses.**

While Defendants responded to this portion of the Government's motion, there is no real dispute among the parties as to the Rules of Evidence and binding precedent.

## **CONCLUSION**

For the foregoing reasons, the Court should grant the relief requested by the United States.

                              Respectfully submitted,

                              ARIANA FAJARDO ORSHAN
                              UNITED STATES ATTORNEY

By:    */s/ Lisa H. Miller*
            Lisa H. Miller
            Court ID No. A5502054
            Daniel J. Marcet
            Assistant United States Attorneys
            United States Attorney's Office
            99 NE 4th Street
            Miami, Florida 33132
            Tel: (305) 961-9312
            Email:  Lisa.Miller@usdoj.gov

## **CERTIFICATE OF SERVICE**

I, Lisa Miller, certify that the foregoing has been served on all attorneys of record in the above-captioned case via the CM/ECF electronic filing system.

By: */s/ Lisa H. Miller*
Lisa H. Miller
Assistant United States Attorney

Dated:   January 30, 2019